UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CORNEL JACKSON,<br><br>    Plaintiff,<br><br>  v.<br><br>JASON QUICK, et al.,<br><br>    Defendants. | No. 1:19-cv-01591-NONE-EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT THIS ACTION PROCEED ON PLAINTIFF'S CLAIMS AGAINST DEFENDANTS JASON QUICK, ELIZABETH ALVAREZ, A. ROSSETTE, LT. FOLLOWELL, LISETTE LOPEZ, DOMINIC RAMOS, KASANDRA SANCHEZ, HERMINA MARLEY, AND C. PURDENTE FOR VIOLATING PLAINTIFF'S FIRST AND SIXTH AMENDMENT RIGHTS WITH RESPECT TO PLAINTIFF'S LEGAL CORRESPONDENCE AND FOR CONSPIRACIES TO VIOLATE SUCH RIGHTS AND AGAINST DEFENDANT ELIZABETH ALVAREZ, FOR VIOLATING PLAINTIFF'S RIGHT OF ACCESS TO THE COURTS, AND THAT ALL OTHER CLAIMS AND DEFENDANTS BE DISMISSED<br><br>(ECF NO. 25)<br><br>TWENTY-ONE DAY DEADLINE |

Plaintiff Cornel Jackson ("Plaintiff") is a pretrial detainee proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff filed the Complaint commencing this action on November 7, 2019. (ECF No. 1). The Court screened Plaintiff's First amended Complaint on July 15, 2020. (ECF No. 24). Plaintiff filed his Second Amended complaint on August 10, 2020. (ECF No. 25). The Complaint brings claims concerning his legal mail and access to legal supplies.

1

The Court has reviewed the complaint and finds, for screening purposes, that Plaintiff's complaint states cognizable claims against (1) Defendants Jason Quick, Elizabeth Alvarez, A. Rossette, Lt. Followell, Lisette Lopez, Dominic Ramos, Kasandra Sanchez, Hermina Marley, and C. Purdente for violating Plaintiff's First and Sixth Amendment rights with respect to Plaintiff's legal correspondence and for conspiracies to violate such rights and (2) Defendant Elizabeth Alvarez, for violating Plaintiff's right to defend himself under the Sixth and Fourteenth Amendments and right of access to the courts under the First and Fourteenth Amendments. The Court recommends that these claims be allowed to proceed past the screening stage and that all other claims and defendants be dismissed.

Plaintiff has twenty-one (21) days from the date of service of these findings and recommendations to file his objections.

## I. SCREENING REQUIREMENT

The Court is required to screen complaints brought by inmates seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the inmate has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2). As Plaintiff is proceeding *in forma pauperis*, the Court may also screen the complaint under 28 U.S.C. § 1915. "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). The mere possibility of misconduct falls short of meeting this

plausibility standard. *Id.* at 679. While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc*., 572 F.3d 677, 681 (9th Cir. 2009) (citation and quotation marks omitted). Additionally, a plaintiff's legal conclusions are not accepted as true. *Iqbal*, 556 U.S. at 678.

Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (holding that pro se complaints should continue to be liberally construed after *Iqbal*).

## II.     ALLEGATIONS IN THE COMPLAINT

Plaintiff's second amended complaint alleges as follows:

### A.     Legal Mail Allegations

Madera County Department of Corrections Classification Unit and Mailroom officers intentionally and continuously violated Plaintiff's constitutional rights when they opened all his outgoing and incoming privileged attorney mail, read it, confiscated or withheld it, and turned it over to the district attorney to prejudice Plaintiff in a pending criminal case.

Over the course of six months, Plaintiff mailed several sealed letters to his defense counsel. The sealed envelopes were prominently labeled "Legal Mail." The letters discussed "defense strategies, as well as evidence found on official misconduct, inconsistencies, racially edited words of the N-word used by law enforcement, and biasness."

Plaintiff's defense counsel performances were below standards. Plaintiff wrote mail to courts, state bar members, and public officials for the purpose of presenting his claims of violations suffered and to retain counsel.

Plaintiff filed a state bar complaint against his defense counsel. It was confiscated or withheld by defendants in the classification unit. They turned photocopies of the complaint over to the district attorney, who then forwarded a copy to defense counsel. This was a clear, conspired practice to keep all participants in the federal crime against Plaintiff aware and prepared.

Madera County Jail policy defines "legal mail" as "all mail addressed to or from non-Judicial government official[s], courts, and Attorneys[.]" Plaintiff's outgoing mail sent to his attorney and the courts called legal mail was confiscated or withheld by the classification unit.

1  The facility's policies, and California law and the constitution were disregarded by
2  Defendant Jason Quick's ("Quick") request. Quick was the head of the classification unit. Upon
3  his request, and to benefit the prosecution team, he conspired with Defendants Elizabeth Alvarez
4  and CPL. A. Rossette ("Alvarez" and "Rossette") to censor and accomplish the prosecutor's
5  unconstitutional request. The conspired agreement between the prosecution team and Quick was
6  ongoing for five months to strip Plaintiff of his Due Process by gathering evidence to use against
7  him and aid the malicious prosecution against him.

8  Plaintiff's defense counsel knowingly allowed the Defendants to prejudice Plaintiff's
9  defense. Plaintiff's defense counsel "has a constitutional duty of effective performance and
10 contract with the Plaintiff and refusing to litigate these violations adjuncted [sic] him to the
11 misconduct."

12 Plaintiff filed a Marsden motion. At the hearing, Plaintiff's defense counsel admitted on
13 the record to knowing that Defendants were opening and monitoring Plaintiff's mail and he was
14 forwarded copies from the district attorney. Plaintiff began acting in pro-per.

15 Plaintiff appealed the Marsden hearing. "By appealing the hearing the Plaintiff would
16 receive the direct evidence needed from the courts or his appellate counsel that would prove the
17 conspired prejudice by the Defendant(s), District Attorney, and Defense Counsel." Quick or his
18 training officer, Lt. Followell ("Followell"), immediately instructed the mailroom officers,
19 Defendants Lisette Lopez, Dominic Ramos, Kasandra Sanchez, Hermina Marley, and C. Purdente
20 ("Lopez," "Ramos," "Sanchez," "Marley" and "Purdente") "to adjunct with the Classification
21 Units conspired acts and ongoing practice of unjustified censorship by opening and reading all
22 [Plaintiff's] incoming legal mail from the Courts or his Attorney, and to confiscate [and]/or
23 withhold all favorable documents (transcripts) that expose the Defendant(s) in CSU."

24 Plaintiff filed a grievance to get answers from Defendants who refused to provide a notice
25 that they were going to open, read, or confiscate Plaintiff's legal mail and provide it to the district
26 attorney's office. Quick responded and denied Defense Counsel's allegations. Plaintiff appealed
27 and all the supervisor agreed with Quick's reply.
28 ///

Plaintiff also filed a grievance with the mailroom officers named as Defendants in this action after his mail from courts was received and opened outside his presence. Lopez rejected the grievance. For sixteen months, Plaintiff's First and Sixth Amendment rights were violated by Defendants in the mailroom regularly opening all his incoming legal mail from federal courts and attorneys outside his presence without his consent.

Plaintiff's legal runners asked the mailroom Defendants about the legal mail, but the mailroom Defendants denied any censorship.

On a couple of occasions, Sanchez personally provided Plaintiff with opened legal mail from the courts. Plaintiff filed a grievance, but it was rejected.

Plaintiff contacted a number of attorneys and established a relationship through requests for assistance. Envelopes marked "Confidential Legal Mail" from attorneys were received and opened outside of his presence or without his consent.

The Northern Innocence Project responded and requested a consent letter to correspond with Plaintiff's legal runners. Plaintiff complied and sent a consent letter to receive assistance with his pending case. Plaintiff's legal runners contacted the Innocence Project lawyer, who had been informed of the legal mail tampering in the first letter. The legal runners told Plaintiff that the lawyer sent additional letters, which Plaintiff never received. Plaintiff also received no notice about them. Plaintiff alleges that withholding these incoming documents violates Plaintiff's right to send and receive legal mail.

The first such letter was delivered, but it was opened outside of Plaintiff's presence. Plaintiff filed a grievance concerning this letter. Prudente reported there was no record of the letter being logged.

Another such letter was properly marked confidential correspondence from an attorney with the Equal Justice Initiative. It was opened outside Plaintiff's presence and without his consent. Plaintiff filed a grievance with Marley because the letter was received with an RTS slip logged by her. Marley stated that she went an RTS slip but no legal mail was sent.

After filing appeals, Plaintiff received transcript order receipts from the courts to the court reporters. These were also withheld or routed to another institution and never received. Plaintiff

needs these court records to seek habeas corpus relief. Plaintiff contacted his appellate counsel and requested the hearing transcripts. His counsel sent properly marked legal mail in response. The letter was opened outside Plaintiff's presence and without his consent. These actions violate Plaintiff's First and Sixth Amendment rights.

### B.     Legal Supplies Allegations

Plaintiff, acting in pro per, after being certified by the Court, immediately requested legal supplies so he could prepare motions in his pending case, which have to be filed with the district attorney and the court in a timely fashion. Defendants in the classification unit who regulate the distribution of legal supplies denied Plaintiff's request for legal supplies without comment.

Plaintiff filed another request for legal supplies. Alvarez stated that Plaintiff is required to purchase his own stamps, envelopes, pens, or papers from the commissary or have someone drop them off. Plaintiff did not have enough money for both hygiene supplies and legal supplies. Plaintiff bought hygiene supplies instead. Plaintiff was officially indigent and the law states he is entitled to these supplies for communicating with the courts. Plaintiff filed a grievance.

Failure to receive the legal supplies hindered Plaintiff's ability to represent himself in his criminal case and in his habeas petitions. Defendants knew Plaintiff was indigent but still charged him for photocopies of exhibits. Classification Unit's legal assistance program provided Plaintiff only with the case law they wanted him to have, not adequate assistance from persons trained in the law.

"Plaintiff filed numerous petitions that were either denied for failure to receive assistance of the correct steps and procedures or due to writs being withheld [and]/or confiscated from Defendant(s)[.]" "Defendant(s) legal assistance policies and practices of strip[p]ing confidentiality from pro-per prisoners by making legal runners sign contract to allow them to monitor any and all legal documents between them and the Plaintiff after showing that they will provide the content to the District Attorney." Defendants' actions also violate California Law, title 15, and the U.S. Constitution.

Plaintiff was called the N-word by an officer. Plaintiff filed a grievance, but Defendants rejected it.

### III. SECTION 1983

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979*)); see also Chapman v. Houston Welfare Rights Org*., 441 U.S. 600, 618 (1979); *Hall v. City of Los Angeles*, 697 F.3d 1059, 1068 (9th Cir. 2012); *Crowley v. Nevada*, 678 F.3d 730, 734 (9th Cir. 2012); *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under § 1983, a plaintiff must allege that (1) the defendant acted under color of state law, and (2) the defendant deprived him of rights secured by the Constitution or federal law. *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006); *see also Marsh v. Cnty. of San Diego*, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" *Preschooler II v. Clark Cnty. Sch. Bd. of Trs*., 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Preschooler II*, 479 F.3d at 1183 (quoting *Johnson*, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." *Arnold v. Int'l Bus. Mach. Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981); *see also Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008).

Additionally, a plaintiff must demonstrate that each named defendant personally

7

participated in the deprivation of his rights. *Iqbal*, 556 U.S. at 676-77. In other words, there must be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691, 695 (1978).

### IV.   ANALYSIS OF PLAINTIFF'S CLAIMS

#### A.   Legal Mail Allegations

Generally, prisoners have "a First Amendment right to send and receive mail." *Witherow v. Paff,* 52 F.3d 264, 265 (9th Cir.1995) (per curiam). Moreover, a prison may adopt regulations or practices that impinge on a prisoner's First Amendment rights as long as the regulations are "reasonably related to legitimate penological interests." *See Turner v. Safley,* 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987).

Confidential correspondence between a prisoner and his criminal attorney is protected by the Sixth Amendment. See *Nordstrom v. Ryan*, 762 F.3d 903, 909 (9th Cir. 2014) ("What prison officials don't have the right to do is read a confidential letter from an inmate to his lawyer."). Additionally, the Ninth Circuit "recognize[s] that prisoners have a protected First Amendment interest in having properly marked legal mail opened only in their presence." *Hayes v. Idaho Corr. Ctr.*, 849 F.3d 1204, 1211 (9th Cir. 2017).

However, this protection does not extend to correspondence with government agencies. *O'Keefe v. Van Boening*, 82 F.3d 322, 326 (9th Cir. 1996) (upholding prison policy including reviewing inmate correspondence with government officials, stating "Regulating correspondence between prisoners and government agencies can serve to prevent criminal activity and maintain prison security"); *Hamilton v. Department of Corrections*, 43 F. App'x 107 (9th Cir. 2002) (unreported) ("Although Hamilton may have a right to correspond confidentially with an FBI agent under California law, *see* Cal.Code Regs. tit. 15, § 3141(a) & (c)(2) (inmates may correspond confidentially with federal officials appointed by the President of the United States, and their staff members), no such federal constitutional right exists"); *Grigsby v. Horel*, No. C 07-2833 CRB (PR), 2008 WL 11422633, at *2 (N.D. Cal., Apr. 28, 2008); *aff'd* 341 F. App'x 314 (9th Cir. 2009) ("The cited incoming mail from the Commission on Judicial Performance, Del

Norte County Superior Court and the State Bar of California is not material because it was not 'legal mail.'"); *Williams v. Simon*, 2018 WL 1585785, at *4 (D. Or. Mar. 30, 2018) ("A prison need not treat all mail sent to government officials as legal mail.").

Here, many of Plaintiff's allegations concerning mail to or from government agencies or courts. Plaintiff's rights are not violated by Defendants reading such letters. *See O'Keefe*, 82 F.3d at 326. But Plaintiff has stated several claims with respect to mail to or from his attorneys. For instance, he alleges that his prosecutors conspired with Quick, who in turn conspired with Alvarez and Rossette, to censor Plaintiff's legal mail by "regularly open[ing] all his incoming legal mail from federal courts *and attorneys* outside his presence without his consent." (emphasis added). Although it is not perfectly clear which attorneys sent the mail, reading Plaintiff's complaint liberally, the Court finds that Plaintiff has adequately stated a claim that Quick, Alvarez and Rossette opened letters from his attorneys outside of his presence. Given the nature of the allegation—that they shared the information with the prosecutors in Plaintiff's criminal case—and reading the complaint liberally, the Court also finds that Plaintiff has alleged those Defendants read such letters.

In addition, Plaintiff alleges that others were involved in censoring Plaintiff's mail. For instance:

> Defendant Jason Quick or his training officer LT. Followell immediately instructed the mailroom officer Defendant(s) Lisette Lopez, Dominic Ramos, Kasandra Sanchez, Hermina Marley, and C. Purdente to adjunct with the Classification units Conspired acts and ongoing practice of unjustified censorship by opening and reading all his incoming Legal mail from the courts or his Attorney, and to confiscate [and]/or withhold all favorable documents (transcripts) . . . .

Thus, Plaintiff states a First Amendment claim to the extent he alleges his legal mail was opened outside of his presence. *See Hayes*, 849 F.3d at 1211. He also states a Sixth Amendment claim to the extent he alleges the defendants read his confidential communications with his attorney. *See Nordstrom*, 762 F.3d at 909 (9th Cir. 2014) ("What prison officials don't have the right to do is read a confidential letter from an inmate to his lawyer."). Accordingly, for screening purposes, Plaintiff has stated claims against Quck, Alvarez, Rossette, Followell, Lopez, Ramos,

1  Sanchez, Marley and Purdente for violating his First and Sixth Amendment rights.

2  **B.     Conspiracy**

To state a claim for conspiracy under § 1983, Plaintiff must show the existence of an agreement or meeting of the minds to violate constitutional rights, *Avalos v. Baca*, 596 F.3d 583, 592 (9th Cir. 2010); *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2001), and that an "actual deprivation of his constitutional rights resulted from the alleged conspiracy," *Hart v. Parks*, 450 F.3d 1059, 1071 (9th Cir. 2006) (quoting *Woodrum v. Woodward County*, *Oklahoma*, 866 F.2d 1121, 1126 (9th Cir. 1989)). "'To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy.'" *Franklin*, 312 F.3d at 441 (quoting *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1541 (9th Cir.1989)). Additionally, Plaintiff must show that Defendants "conspired or acted jointly in concert and that some overt act [was] done in furtherance of the conspiracy." *Sykes v. State of California*, 497 F.2d 197, 200 (9th Cir. 1974).

Plaintiff alleges that the prosecutors conspired with Quick, who in turn conspired with Alvarez and Rossette, to censor Plaintiff's legal mail. Plaintiff also alleges that Quick or Followell instructed Lopez, Ramos, Sanchez, Marley and Purdente to open Plaintiff's legal mail in violation of his First and Sixth Amendment rights. Thus, he has stated a claim against Quick, Alvarez, Rossette, Followell, Lopez, Ramos, Sanchez, Marley, and Purdente for conspiracies to violate his First and Sixth Amendment rights.

**C.     Legal Supplies Allegations**

Plaintiff alleges he was provided with insufficient supplies to use to defend himself in his criminal case.

"[P]risoners have a constitutional right of access to the courts." *Bounds v. Smith*, 430 U.S. 817, 821 (1977).[1] Indeed, the Supreme Court has recognized its "decisions have consistently required States to shoulder affirmative obligations to assure all prisoners meaningful access to the courts." *Id.* at 824. "[W]hat *Bounds* required was that the resources meet minimum constitutional

---

[1] Additional elements for a cause of action based on lack of access to the courts were explained in *Lewis v. Casey*, 518 U.S. 343 (1996).

10

standards sufficient to provide meaningful, though perhaps not ideal, access to courts." *Phillips v. Hust*, 588 F.3d 652, 656 (9th Cir. 2009) (cleaned up). This standard requires that "the tools of litigation must be made available when necessary to ensure 'meaningful access' to the courts." *Id.* at 655-56 (quoting *Lewis v. Casey*, 518 U.S. 343, 351 (1996)).

A lack of supplies may support a claim for lack of access to the courts, in certain circumstances. For instance, relying on *Bounds*, the District of Colorado ordered the government to provide an incarcerated *pro se* defendant with certain necessary trial preparation supplies:

> To ensure an inmate's constitutional right of meaningful access to the courts, the state must provide him with a "reasonably adequate opportunity" to present his legal claims. *Bounds v. Smith*, 430 U.S. 817, 825, 97 S.Ct. 1491, 1496, 52 L.Ed.2d 72 (1977); *Petrick v. Maynard*, 11 F.3d 991, 994 (10th Cir. 1993). Practically, this standard requires prisoners be afforded paper, writing implements, stamps, and access to notary services, as well access to an adequate law library or legal advisor. *Bounds*, 97 S.Ct. at 1496–97; *Petrick*, 11 F.3d at 994. Beyond these basic requirements, the state is required to provide only such items as shown to be necessary to "assist inmates in the preparation and filing of meaningful legal papers." *Bounds*, 97 S.Ct. at 1498. *See also Wolff v. McDonnell*, 418 U.S. 539, 576, 94 S.Ct. 2963, 2984, 41 L.Ed.2d 935 (1974) (chief aim of court's access precedents is to "protect[ ] the ability of an inmate to prepare a petition or complaint").
>
> Moreover, even as to the established basic necessities (paper, pen, etc.), a prisoner does not have an unlimited right to plumb the public fisc for supplies. "Reasonable regulations are necessary to balance the rights of prisoners with budgetary considerations." *Twyman v. Crisp*, 584 F.2d 352, 359 (10th Cir. 1978). *See also Penrod v. Zavaras*, 94 F.3d 1399, 1403 (10th Cir. 1996) ("[T]he constitutional obligation to provide inmates access to courts does not require states to give inmates unlimited access to a law library, and inmates do not have the right to select the method by which access will be provided.") (internal citation omitted). Prison administrators thus may place reasonable limits on the quantity and type of items inmates may be given or to which they may be permitted access.

*United States v. Santiago*, 199 F. Supp. 3d 1287, 1289-90 (D. Colo. 2016). *See also Brown v. Morales*, No. CV 15-0483-FMO (JEM), 2018 WL 6016158, at *7 (C.D. Cal. Mar. 6, 2018), *report and recommendation adopted,* 2018 WL 6164256 (C.D. Cal. May 17, 2018) ("The Sixth and Fourteenth Amendments protect a criminal defendant's right to conduct his own defense. *Faretta v. California*, 422 U.S. 806, 834-36 (1975). The right to self-representation may be violated if an inmate is denied access to law books, witnesses, and other tools necessary to

prepare a defense. *Taylor v. List*, 880 F.2d 1040, 1047 (9th Cir. 1989); *see also Milton v. Morris*, 767 F.2d 1443, 1145-46 (9th Cir. 1985).").

In the past, the Ninth Circuit had addressed this issue in habeas cases. Before being reversed by the Supreme Court, the Ninth Circuit had held "an incarcerated criminal defendant who chooses to represent himself has a constitutional right to access law books or other tools to assist him in preparing a defense." *Espitia v. Ortiz*, 113 F. App'x 802, 804 (9th Cir. 2004) (cleaned up) (quoting *Bribiesca v. Galaza*, 215 F.3d 1015, 1020 (9th Cir.2000)), *cert. granted, judgment rev'd sub nom. Kane v. Garcia Espitia*, 546 U.S. 9 (2005). But in its reversal, the Supreme Court noted that *Faretta v. California*, 422 U.S. 806 (1975), upon which the Ninth Circuit relied, did not clearly establish such a right *for habeas corpus purposes*:

> The federal appellate courts have split on whether *Faretta*, which establishes a Sixth Amendment right to self-representation, implies a right of the *pro se* defendant to have access to a law library. Compare *Milton, supra,* with *United States v. Smith,* 907 F.2d 42, 45 (C.A.6 1990) ("[B]y knowingly and intelligently waiving his right to counsel, the appellant also relinquished his access to a law library"); *United States ex rel. George v. Lane,* 718 F.2d 226, 231 (C.A.7 1983) (similar). That question cannot be resolved here, however, as it is clear that *Faretta* does not, as § 2254(d)(1) requires, "clearly establis[h]" the law library access right. In fact, *Faretta* says nothing about any specific legal aid that the State owes a *pro se* criminal defendant. The *Bribiesca* court and the court below therefore erred in holding, based on *Faretta*, that a violation of a law library access right is a basis for federal habeas relief.

546 U.S. at 10 (alterations in original).

Given these precedents, the Court finds that Plaintiff sufficiently states a claim for violation of access to the courts to proceed past screening.[2]

## V. CONCLUSION AND RECOMMENDATIONS

The Court has screened Plaintiff's amended complaint and finds that it states cognizable claims against (1) Defendants Quick, Alvarez, Rossette, Followell, Lopez, Ramos, Sanchez, Marley, and Purdente for violating Plaintiff's First and Sixth Amendment rights with respect to Plaintiff's legal correspondence and for conspiracies to violate such rights and (2) Alvarez for violating Plaintiff's right of access to the courts.

---

[2] It is possible that Plaintiff has active criminal proceedings. If so, certain of the claims might be subject to stays or dismissals pending the outcome of those proceedings.

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. This case proceed on Plaintiff's claims against:

   a. Defendants Jason Quick, Elizabeth Alvarez, A. Rossette, Lt. Followell, Lisette Lopez, Dominic Ramos, Kasandra Sanchez, Hermina Marley, and C. Purdente for violating Plaintiff's First and Sixth Amendment rights with respect to Plaintiff's legal correspondence and for conspiracies to violate such rights; and

   b. Defendant Elizabeth Alvarez for violating Plaintiff's right of access to the courts; and

2. All other claims in Plaintiff's Second Amended Complaint be dismissed, with prejudice.

These findings and recommendations will be submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within twenty-one (21) days after being served with these findings and recommendations, Plaintiff may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **September 29, 2020**          /s/ Erica P. Grosjean
                                          UNITED STATES MAGISTRATE JUDGE

13