UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CORNEL JACKSON,<br><br>    Plaintiff,<br><br>  v.<br><br>JASON QUICK, et al.,<br><br>    Defendants. | Case No. 1:19-cv-01591-JLT-EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BE GRANTED, IN PART, AND DENIED, IN PART<br><br>(ECF No. 108)<br><br>OBJECTIONS, IF ANY, DUE WITHIN TWENTY-ONE DAYS |

## I. INTRODUCTION

Plaintiff Cornel Jackson is a pretrial detainee confined at the Madera County Jail and proceeds *pro se* and *in forma pauperis* in this civil rights action. This case proceeds on Plaintiff's claims that Defendants Jason Quick, Elizabeth Alvarez, A. Rossette, Lt. Followill, Lisette Lopez, Dominic Ramos, Hermina Marley, and Carmela Prudente violated his First and Sixth Amendment rights regarding his legal mail, that these Defendants engaged in a conspiracy to violate those rights, and that Alvarez violated his right of access to the courts.[1] (ECF No. 30 – order adopting September 30, 2022 findings and recommendations (ECF No. 26)).

On April 7, 2022, Defendants moved for summary judgment on all claims, or alternatively, for summary adjudication. (ECF No. 108). Plaintiff opposed the motion on June

---

[1] Where different, the Court uses Defendants' spelling of their names rather than Plaintiff's spelling.

1

2, 2022. (ECF No. 115). On June 16, 2022, Defendants filed their reply. (ECF No. 118). Thereafter, the Court directed Defendants to provide the notice to Plaintiff required by *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998), with Defendants doing so on July 18, 2022. (ECF Nos. 120, 121). As permitted, Plaintiff thereafter filed a declaration in support of his opposition on August 15, 2022. (ECF No. 122). Defendants did not file a reply, and the time to do so has expired. (*See* ECF No. 120, p. 2).

Based on the evidence submitted by the parties, the Court will recommend that Defendants' motion for summary judgment be granted to the extent that it seeks dismissal of Plaintiff's conspiracy and access-to-the-court claims and denied to the extent that it seeks dismissal of Plaintiff's legal-mail claims.

## II.   SUMMARY OF CLAIMS

The Court's order screening Plaintiff's second amended complaint concluded that he stated several claims for violation of his First and Sixth Amendment regarding his legal correspondence with his attorneys.[2] (ECF No. 26, p. 9). Although it was unclear "which attorneys sent the mail," Plaintiff's complaint stated sufficient allegations about the Defendants reading, confiscating, and regularly opening his correspondence with his attorneys outside of his presence to allow these claims to proceed past the screening stage. (*Id.* at 9-10).

Plaintiff's claim that Defendants conspired to violate his First and Sixth Amendment rights proceeds on his allegations that prosecutors in his state criminal case conspired with Quick, who in turn conspired with Alvarez and Rossette, to censor Plaintiff's legal mail. (*Id.* at 10). The case also proceeds on allegations that Quick or Followill instructed Lopez, Ramos, Sanchez, Marley and Prudente to open Plaintiff's legal. (*Id.*).

Plaintiff's access-to-the-court claim proceeds on his allegations that Alvarez failed to provide him with sufficient legal supplies to allow him to represent himself in proceedings related to his state court criminal case. (*Id.* at 10-11).

All other claims in the second amended complaint were dismissed with prejudice. (*Id.* at 13; ECF No. 30, p. 2).

---

[2] Claims were also allowed to proceed against Defendant Kasandra Sanchez; however, this Defendant was dismissed on June 6, 2022, for failure to complete service. (ECF No. 116).

2

## III. SUMMARY JUDGMENT

### A. Defendants' Motion for Summary Judgment

Defendants' motion for summary judgment argues that the available evidence shows that they did not violate Plaintiff's constitutional rights and Plaintiff does not have any evidence to create a genuine issue of material fact for his claims. (ECF No. 108).

#### i. Legal mail

Defendants argue that much of what Plaintiff believes to be legal mail based under Jail policy does not constitute legal mail for purposes of federal law and that such allegations are thus not properly before the Court. (ECF No. 108-1, p. 5). Next, Defendants assert that Plaintiff has no evidence that any properly marked legal mail was opened and read by any Defendant, let alone in an arbitrary and capricious manner so as to constitute a violation of federal law. (*Id.* at 6). In support, Defendants attach Jail mail logs, which record Plaintiff's legal mail as being delivered unopened. (ECF No. 108-4). They also provide their own declarations regarding the pieces of mail that they handled, stating that they did not intentionally open or read any correspondence with Plaintiff's attorneys. (*See* 108-6, 108-7, 108-8, 108-9, 108-10).

#### ii. Conspiracy

Defendants argue that Plaintiff has no evidence showing that Defendants conspired amongst themselves or with Madera County prosecutors to interfere with his legal mail. (ECF No. 108-1, p. 7). In support, Defendants provide their declarations, stating that they never conspired with each other or prosecutors regarding Plaintiff's mail. (*See* 108-3, 108-4, 108-6, 108-7, 108-8, 108-9, 108-10, 108-11).

#### iii. Access to the courts

Defendant Alvarez argues that there is no evidence that she denied Plaintiff any legal materials that he was entitled to. (ECF No. 108-1, p. 8). Further, Alvarez argues that, assuming that Plaintiff was denied legal materials, he fails to show actual prejudice regarding any of his litigation as required by federal law. (*Id.*). In support, Alvarez provides her declaration, stating that she did not deny Plaintiff legal materials that he was entitled to and discussing some of her responses to grievances concerning legal supplies. (ECF No. 108-10).

///

### iv. Supporting documents

In addition to the documents described above, the Defendants attach the following documents in support of their motion: a statement of undisputed facts; Jail policies regarding legal mail and legal services; Plaintiff's grievances concerning his mail and legal services; and the declaration of defense counsel concerning Plaintiff's deposition, with attached excerpts from the deposition. (ECF Nos. 108-3, 108-5).

### B. Plaintiff's Opposition

Plaintiff argues that he has evidence creating a genuine dispute of material fact for each claim. (ECF No. 115). Plaintiff's opposition consists of his declarations, a statement of undisputed facts, a memorandum, and the declarations of two of his cellmates.[3]

### i. Legal Mail

Plaintiff states that he has a least forty envelopes that meet the Jail's definition of "legal mail" that were opened outside of his presence. (ECF No. 122, p. 8). He asserts that "all his incoming and outgoing mail between September 21, 2018 and May 2020 was correspondence about his criminal case," with this mail being "confiscated [and] delivered to a different institution and continuously opened outside of [his] presence in contravention of jail policy and 'in an arbitrary and capricious way' specifically to harass [him]."[4] (ECF No. 122, p. 9). As for specific mailings, Plaintiff identifies the following:

1. A September 21, 2018 mailing, identified in Lopez's declaration, that Plaintiff asserts was from his defense counsel, was properly marked as legal mail, and was delivered open. (ECF No. 115, p. 4).

2. A mailing from the Northern California Innocence project, and another from the Equal Justice Initiative,[5] with Plaintiff asserting that both were properly marked as legal mail and were delivered open. (ECF No. 25, p. 8; ECF No. 115, p. 4).

---

[3] Plaintiff's declarations include the one attached to his opposition and his two supplemental declarations filed in June and August 2022. (ECF Nos. 117, 122).
[4] For readability, minor alterations, such as altering capitalization, correcting misspellings, and adding punctuation, have been made to quoted portions of Plaintiff's filings without indicating each change.
[5] The allegations regarding the letter from the Equal Justice Initiative are contained in Plaintiff's verified second amended complaint. *See Lew v. Kona Hosp.*, 754 F.2d 1420, 1423 (9th Cir. 1985) ("A verified complaint may be treated as an affidavit to the extent that the complaint is based on personal knowledge and sets forth facts admissible in evidence and to which the affiant is competent to testify.").

3. Unspecified "confidential information" obtained by Plaintiff's legal runner and delivered open by Alvarez. (*Id.* at 5).

4. A mailing from "a lawyer who [Plaintiff] was trying to retain to represent him in his pending criminal case . . . was opened outside of his presence" and was labeled, "Legal Correspondence. Do not open except in presence of addressee." (*Id.* at 6).

5. A mailing from Plaintiff's attorney responding to Plaintiff's request for transcripts was delivered open. (*Id.*). Additionally, a further response from his attorney regarding his request for transcripts was also delivered open. (*Id.* at 7).

6. Mailings from the ACLU that were properly marked legal mail were delivered open. (*Id.*).

Plaintiff acknowledges that he did not witness any Defendant open or read his mail but argues that the fact that mail was "repeatedly opened outside his presence in contravention of jail policy" is supported officers who will testify that the mail was delivered open. (*Id.* at 10; *see id.* at p. 7 (stating that "all officers [who delivered mail] will be called to testify in court that properly labeled legal mail has been continuously opened before delivery").

Additionally, he states that "attorneys will testify at trial to the reason to the correspondence, what date the letters were sent, and to what address these letters were sent and never received." (*Id.* at 18). Further, Plaintiff recounts an instance from a state court proceeding on September 14, 2018, where defense counsel "depicted a situation" that "Plaintiff's mail he was sending out was being monitored where Defendants were knowingly and intentionally interfering with the Plaintiff's criminal case in contravention of jail policy." (*Id.* at 3). He says that he has court documents reflecting counsel stating under oath "that he has been getting copies of Plaintiff's mail from the District Attorney's Office. That I did inform [him] that [his] mail is being monitored." (*Id.* at 17) (alterations in original).

Plaintiff does not specify which attorney will testify or provide any state court transcripts. However, he states that "defense counsel Craig Collins has knowingly and intentionally refused to assist [him] in this civil action" and that he "requested a declaration from his defense counsel[6] which is still to come, but counsel withdrew from his case on July

---

[6] It is unclear if this reference to defense counsel is Attorney Craig Collins or a different attorney.

5

28, 2022." (ECF No. 122, p. 4; *see also* p. 13 (noting that he received no response from defense counsel regarding his request for a declaration on the issue of mail monitoring)).

Besides his own declarations, Plaintiff submits declarations from two of his cellmates. The first is from Christopher Caudillo and declares that he was cellmates with Plaintiff at the end of 2019 and he witnessed Plaintiff "receive legal letters that were opened prior to delivery." (ECF No. 115, p. 39). The second from Steve Garcia declares that he was cellmates with Plaintiff in 2018-2019 and he "witnessed every legal letter delivered to him be delivered already open." (*Id.* at 41).

### ii. Conspiracy

Plaintiff asserts that Defendants turned over his mail to state court prosecutors, "who used the confidential information to suppress the state officials acts of misconduct and bad faith." (*Id.* at 8). Citing the state court hearing where his attorney allegedly "exposed" Defendants turning over his mail to state court prosecutors, Plaintiff says this shows that Defendants were involved in a conspiracy to hamper his ability to litigate his criminal case. (*Id.* at 10). Plaintiff states that the only reasonable conclusion as to how prosecutors obtained his mail is that "Defendants were monitoring his mail and providing it to the [prosecution]." (*Id.* at 29). Relatedly, Plaintiff states that transcripts show that the state trial court "obstructed justice by editing the record or ante-dating hearings which were intentionally obstructed and introduced to the Court of Appeals to cover-up the State's prejudice to the pending criminal case." (*Id.* at 11). Plaintiff also cites a conversation he had with a watch commander, who advised him that his mail was "red flagged, meaning monitored," but refused to answer when Plaintiff asked him who red flagged the mail. (ECF No. 115, p. 16).

The declarations of Plaintiff's cellmates each state that Defendants have conspired to harass Plaintiff. Specifically, Caudillo's declaration states that Plaintiff was "harassed by Defendants to prevent him from exposing state officials who intentionally disregard[ed] documented facts of his innocence, as well as to prevent their participation of substantial prejudicing him from being exposed." (*Id.* at 40). Garcia's declaration states that he "witnessed [Plaintiff] being harassed in every way imaginable and their treatment was not rationally related to a legitimate government purpose, it was to stop him from first proving his innocence,

6

and second to prevent themselves from discipline for violating well established laws interfering with his case." (*Id.* at 42).

### iii. Access to the courts

Plaintiff says that he filed multiple requests for legal supplies and that Alvarez was motivated to deny him supplies to interfere with his "ability to adequately litigate." (*Id.* at 21). He suffered "injury where his complaints and petitions were denied from technical problems and failure to provide supporting evidence from the Defendants' performance." (*Id.*). Alvarez also charged him for supplies, causing him to run a negative balance. (*Id.*). Also, Lieutenant Rodriquez told him that he was not supposed to be charged for photocopies under Jail policy. (*Id.* at 22).

The declarations of Plaintiff's cellmates state that Plaintiff was denied legal supplies or improperly charged for them. Specifically, Caudillo's declaration states that, "I witnessed him request legal supplies where his request would be ignored." (*Id.* at 39). He also witnessed the conversation where Lieutenant Rodriguez told him that Jail policy was that he would receive free legal supplies. (*Id.* at 40). Garcia's declaration states that he witnessed the conversation with Lieutenant Rodriguez, who said that it was Jail policy that legal supplies would be provided to inmates proceeding *pro per*. (*Id.* at 42).

### iv. Rule 56(d) motion

Lastly, within one of his declarations, Plaintiff cites Rule 56(d) and asks the Court to postpone review of Defendants' motion for summary judgment so he can interview witnesses and submit additional evidence. (*See* ECF No. 122, p. 11).

### C. Defendants' Reply

Defendants' reply states that, if the Court concludes that Plaintiff has produced sufficient evidence that he received opened legal mail, Plaintiff has still failed to offer evidence showing that it was opened arbitrarily or capriciously as required by federal law. (ECF No. 118, p. 2).

Plaintiff's conspiracy claim fails because Plaintiff's opposition offers no actual evidence that there was a conspiracy regarding his mail. Particularly, Plaintiff's assertion—that his defense counsel stated on the record that prosecutors had received his mail—is insufficient

to create a genuine dispute of material fact on this issue because Plaintiff provided no hearing transcript or declaration from his attorney. (*Id.* at 4).

Lastly, Plaintiff's access-to-the-courts claim fails because, among other things, Plaintiff offers no evidence to support his contention that he had complaints and petitions that were denied so as to cause him an actual injury. (*Id.* at 5).

### D. Discussion

#### i. Legal standards for summary judgment

Summary judgment in favor of a party is appropriate when there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Albino v. Baca ("Albino II")*, 747 F.3d 1162, 1169 (9th Cir. 2014) (*en banc*) ("If there is a genuine dispute about material facts, summary judgment will not be granted."). A party asserting that a fact cannot be disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials, or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)-(B).

A party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). If the moving party does so, "the burden then shifts to the non-moving party to designate specific facts demonstrating the existence of genuine issues for trial," which is not a light burden, the party "must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Id.*; *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) ("The mere existence of a scintilla of evidence in support

of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322. Additionally, "[a] summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

In reviewing the evidence at the summary judgment stage, the Court "must draw all reasonable inferences in the light most favorable to the nonmoving party." *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 942 (9th Cir. 2011). It need only draw inferences, however, where there is "evidence in the record . . . from which a reasonable inference . . . may be drawn . . . ."; a court need not entertain inferences that are unsupported by fact. *Celotex*, 477 U.S. at 330 n. 2 (citation omitted). Additionally, "[t]he evidence of the non-movant is to be believed . . . ." *Anderson*, 477 U.S. at 255.

### ii. Rule 56(d) motion

As an initial matter, Plaintiff's declaration asks this Court to postpone consideration of Defendants' motion for summary judgment, citing Rule 56(d), which permits a court to deny or defer considering a motion for summary judgment, allow additional discovery, or issue any other appropriate order if the nonmoving party "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). The Court construes the request as a motion made under Federal Rule of Civil Procedure 56(d).

As grounds, Plaintiff states as follows:

> Plaintiff submitted a request for photocopies to present supporting statements documented from the Plaintiff's deposition to establish a triable issue as to all the personal knowledge of material facts that contradict the Defendants' sworn statements in their declarations. Plaintiff contends that it is well established in the record of this action that without the proper access to materials needed it is clearly impossible to adequately litigate his claim or present the supporting evidence, which has shown to be a major problem. [He needs] the full and fair opportunity to interview witnesses (module officers and inmates) who are willing to testify, and in fact, continue to ask when is a trial or deposition so they can come forward and introduce their subjective knowledge of the ongoing misconduct of improperly opening of legal mail in contravention of Jail policy that occurs within the mail process.

9

(ECF No. 122, p. 11). He further states that he "was not provided photocopies and the envelope was not big enough to send the original documents from [his] deposition," attaching an inmate request form that he contends supports this assertion. (*Id.*). Lastly, Plaintiff states that he is in the process of being appointed a new defense attorney "who may be diligent to his duties and obligations to [him] as his client unlike [his] prior attorneys." (*Id.*).

The Court's June 2, 2021 scheduling order provided approximately eight months, until February 4, 2022, for the parties to conduct non-expert discovery. (ECF No. 76, p. 5). Plaintiff never filed any motion asking to extend the period to interview witnesses or obtain additional evidence, nor does he explain—beyond citing the difficulties in litigating a case inherent with incarceration—why he could not have completed discovery during the relevant time period.

Moreover, Plaintiff does not specify what documents relating to his deposition he needs and why, and the Court already has many excerpts from the deposition, which are attached to Defendants' motion for summary judgment. (ECF No. 108-5). Further, the attached exhibit that Plaintiff provides to support his contention that he was denied photocopies and envelopes does not support his allegations. Notably, the attached inmate request form states, "I would like to request [] photocopies and legal postage due to my indigence I cannot afford the fees." (*Id.* at 15). The response states, "Here is some indigent civil pro per postage." (*Id.*). Accordingly, the response indicates that Plaintiff received postage. While it is silent as to his request for photocopies, it does not show that he was denied them.

Given these circumstances, Plaintiff has failed to offer "specified reasons" for why he cannot present facts essential to support his opposition absent additional discovery.

### iii. Legal Mail

Inmates have a right under the First and Sixth Amendments to have their properly marked legal mail opened in their presence, and prison officials may not read their legal mail. *Hayes v. Idaho Corr. Ctr.*, 849 F.3d 1204, 1208 (9th Cir. 2017) (concluding that First Amendment protected right of prisoner to have legal mail opened in his presence); *Mangiaracina v. Penzone*, 849 F.3d 1191, 1196 (9th Cir. 2017) (concluding that pretrial detainee had a Sixth Amendment right to privately confer with counsel and not have legal mail opened outside his presence); *Nordstrom v. Ryan*, 762 F.3d 903, 910-11 (9th Cir. 2014)

(concluding that the Constitution prohibits reading ongoing attorney-client correspondence). The rationale for these protections is that permitting prison officials to inspect legal mail outside an inmate's presence could chill attorney-client communications. *See Nordstrom*, 762 F.3d at 910 ("It takes no stretch of imagination to see how an inmate would be reluctant to confide in his lawyer about the facts of the crime, perhaps other crimes, possible plea bargains, and the intimate details of his own life and his family members' lives, if he knows that a guard is going to be privy to them, too.").

To prove a violation regarding legal mail, a plaintiff must "clarify who sent the mail or whether it was properly marked as 'legal mail.'" *Hayes v. Idaho Corr. Ctr.*, 849 F.3d 1204, 1211 (9th Cir. 2017). The Ninth Circuit has not provided a definitive answer as to how legal mail must be labeled to be "properly marked" and has declined to "decide whether mail clearly sent from a lawyer to an inmate but lacking the "Legal Mail" designation may be opened outside the presence of the inmate." *Keenan v. Hall*, 83 F.3d 1083, 1094 (9th Cir. 1996), *opinion amended on denial of reh'g*, 135 F.3d 1318 (9th Cir. 1998); *see Evans v. Gower*, No. 2:17-CV-01162-MK, 2022 WL 3226968, at *8 (D. Or. Aug. 10, 2022) ("Since *Hayes*, the Ninth Circuit has left open the question of what exactly constitutes "properly marked" legal mail.").

Additionally, a plaintiff must show that the opening of the mail was due to more than negligence to state a constitutional violation. *Stevenson v. Koskey*, 877 F.2d 1435, 1441 (9th Cir. 1989) ("Stevenson has not shown, based on this record, that Koskey's conduct concerning plaintiff's mail rose beyond the level of mere negligence."). However, [t]he absence of a clear pattern beyond [a couple] incidents does not preclude relief" because "even isolated incidents of improper mail opening may, in appropriate circumstances, be sufficient to allege a [constitutional] violation." *Mangiaracina*, 849 F.3d at 1197. Notably, "[t]wo or three pieces of mail opened in an arbitrary or capricious way suffice to state a claim." *Hayes*, 849 F.3d at 1211 (quoting *Merriweather v. Zamora*, 569 F.3d 307, 317 (6th Cir. 2009)).

With these standards in mind, the Court turns to the parties' arguments, beginning with the Defendants. They argue that they did not arbitrarily or capriciously open or read Plaintiff's legal mail and that Plaintiff has no evidence to the contrary. In support, they have provided a

mail log, recording information about Plaintiff's inmate mail, such as the sender, sender address, type of mail (legal or personal), the delivery date, the officer who processed the mail, and for some mailings, whether it was sent unopened. (ECF No. 108-4). Moreover, they have provided their own declarations regarding the pieces of mail they handled, with each declaration asserting that the pertinent Defendant did not intentionally open or read any correspondence with Plaintiff's attorneys. (*See* 108-6, 108-7, 108-8, 108-9, 108-10). As an example of one such declaration, Prudente states as follows:

> Based on my review of Plaintiff's Inmate Mail History, as well as my custom and practice in processing inmate mail when I worked at the Jail, I can represent that I did not intentionally open any of correspondence between Plaintiff and his criminal defense counsel, or mail sent by Plaintiff to a court, and I did not read any of this correspondence. The only entry in the Inmate Mail History related to a lawyer or legal entity that represented Plaintiff in relation to his criminal prosecution is from January 26, 2020, which is correspondence from the Central California Appellate Program. The log represents that this mail was sent to Plaintiff unopened, and I have no reason to believe this entry is incorrect. I also did not confiscate or withhold any letters or other documents related to Plaintiff.

(ECF No. 108-8, p. 3).

Based on the above, the Court concludes that the burden has shifted to Plaintiff to come forward with specific facts demonstrating the existence of genuine issues for trial from which a jury could reasonably render a verdict in his favor. *In re Oracle*, 627 F.3d at 387. The Court begins by addressing the scope of the claims that survived screening.

On this issue, Plaintiff's declaration states that "he possesses at least 40 envelopes that meet the element of the [Jail policy's] description as defined as 'legal mail' that [were] opened outside of [his] presence in contravention of the Jail policy." (ECF No. 122, p. 8). The Jail policy that Plaintiff references defines legal mail as follows:

> Mail between an inmate and attorneys, legal aid services, judges and clerks of federal, state and local courts, public defenders, district attorneys, officials of confining authority, government officials, administrators of grievance systems and members of the parole authority.

(ECF No. 108-3, p. 6) (capitalization omitted).

However, as Defendants point out, this definition of "legal mail" is more expansive than the scope of "legal mail" at issue for Plaintiff's constitutional claims. (ECF No. 108-1, p. 5). The Court agrees, as the screening order concluded that "many of Plaintiff's allegations

12

concern[ed] mail to or from government agencies or courts" and "Plaintiff's rights are not violated by Defendants reading such letters." (ECF No. 26, p. 9); *Keenan*, 83 F.3d at 1094 ("Mail from the courts, as contrasted to mail from a prisoner's lawyer, is not legal mail."); *O'Keefe v. Van Boening*, 82 F.3d 322, 326 (9th Cir. 1996) (a prison need not treat all mail sent to and from government agencies and officials as legal mail). Rather, this case proceeds only on Plaintiff's claims concerning legal correspondence with "his attorneys." (ECF No. 26, p. 9). Accordingly, to the extent that Plaintiff continues to try to assert claims that were dismissed at screening based on the Jail's definition of legal mail, such claims are not properly before the Court. *Nordstrom*, 762 F.3d at 911 (noting that "a prison regulation does not equate to a constitutional right").

Turning to the mailings at issue in this case, the Court concludes that Plaintiff has offered sufficient evidence to create a genuine issue of material fact for trial. As noted above, Plaintiff's declaration specifies instances where he allegedly received properly identified legal mail opened outside his presence. As one example, Plaintiff cites a letter from his counsel following a state court proceeding in September 2018 that he alleges was opened outside his presence. (ECF No. 115, p. 4). While he does not provide many details about this mailing, he says it was described in Lopez's declaration, which addresses only one letter in detail: "There is only one entry in the Inmate Mail History where I processed a letter from Plaintiff's criminal defense counsel (September 21, 2018), and this document notes that this letter was sent unopened." (ECF No. 108-6, p. 3).

Beyond Lopez acknowledging that this letter came from an attorney, the mail log also recognizes that it came from a law firm, "Ciummo & Associates" and labels it "legal mail." (ECF No. 108-4, p. 11) (capitalization omitted). *Cf. Keenan*, 83 F.3d at 1094 (declining to "decide whether mail clearly sent from a lawyer to an inmate but lacking the "Legal Mail" designation may be opened outside the presence of the inmate"). While Lopez declares that she did not "intentionally open [or read] any [] correspondence between Plaintiff and his criminal defense counsel," Plaintiff declares that he received this letter opened. (ECF No. 108-6, p. 3); (*see* ECF No. 115, pp. 3-4 (stating that letter was "received opened outside of [Plaintiff's] presence")). Such dispute is sufficient to create a genuine issue of material fact for trial.

The Court notes that Defendants' reply argues that they are entitled to summary judgment because, even assuming that Plaintiff received opened legal mail, he has no evidence to show that it was opened by "any of the [D]efendants intentionally and arbitrarily." (ECF No. 118, p. 3). However, the facts in this case allow a reasonable inference that the mail was opened in an arbitrary of capricious manner. As noted above, "a plaintiff need not allege a longstanding practice of violating his First Amendment rights" regarding a legal mail claim. *Hayes*, 849 F.3d at 1212. Here, the fact that the above mailing was documented as both legal mail and coming from an attorney, coupled with Plaintiff's declaration that it was delivered opened, is sufficient to create a genuine dispute as to whether Lopez opened the mailing arbitrarily and capriciously. Moreover, the Court is mindful that Plaintiff declares that he received multiple other mailings opened, including for example, a letter from "a lawyer who [Plaintiff] was trying to retain to represent him in his pending criminal case which was opened outside of his presence" and was labeled, "Legal Correspondence. Do not open except in presence of addressee." (ECF No. 115, p. 6). Such allegations of a pattern of his legal mail being delivered open reasonably suggest that the mailings were being opened arbitrarily and capriciously.

Upon review of the record, Plaintiff has offered sufficient evidence to create a genuine dispute of material fact from which a jury could reasonably render a verdict in his favor on his legal-mail claims. Accordingly, Defendants are not entitled to summary judgment on such claims.

### iv. Conspiracy

To state a claim for conspiracy under § 1983, Plaintiff must show the existence of an agreement or meeting of the minds to violate constitutional rights, *Avalos v. Baca*, 596 F.3d 583, 592 (9th Cir. 2010); *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2001), and that an "actual deprivation of his constitutional rights resulted from the alleged conspiracy," *Hart v. Parks*, 450 F.3d 1059, 1071 (9th Cir. 2006) (quoting *Woodrum v. Woodward County, Oklahoma*, 866 F.2d 1121, 1126 (9th Cir. 1989)). "To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy." *Franklin*, 312 F.3d at 441 (quoting *United*

*Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1541 (9th Cir.1989)). Additionally, Plaintiff must show that Defendants "conspired or acted jointly in concert and that some overt act [was] done in furtherance of the conspiracy." *Sykes v. State of California*, 497 F.2d 197, 200 (9th Cir. 1974).

With these standards in mind, the Court turns to the parties' arguments, beginning with the Defendants. They argue that Plaintiff has no evidence showing that Defendants conspired amongst themselves or with Madera County prosecutors to interfere with his legal mail. (ECF No. 108-1, p. 7). In support, Defendants provide their declarations, stating that they never conspired with each other or prosecutors regarding Plaintiff's mail. (*See* 108-3, 108-4, 108-6, 108-7, 108-8, 108-9, 108-10, 108-11). Moreover, the declarations of Followill and Quick state that they never instructed anyone to open, read, or confiscate Plaintiff's legal mail. (ECF No. 108-3, p. 3; 108-11, p. 2).

Based on the above, the Court concludes that the burden has shifted to Plaintiff to come forward with specific facts demonstrating the existence of genuine issues for trial from which a jury could reasonably render a verdict in his favor. *In re Oracle*, 627 F.3d at 387.

Plaintiff's statement of disputed facts alleges that Defendants entered an agreement with state prosecutors to intercept his mail to gather evidence against him in his state court criminal case and that the trial court was "a major participant" in the conspiracy, "denying the Plaintiff's request motions to cover up its criminal acts."[7] (ECF No. 115, p. 20). However, Plaintiff has failed to "state specific facts to support the existence of the claimed conspiracy." *Burns v. Cnty. of King*, 883 F.2d 819, 821 (9th Cir. 1989).

Importantly, Plaintiff provides no facts showing that there was any agreement or meeting of the minds for Defendants to interfere with his legal mail. The Court notes Plaintiff's assertion that he "possesses court documented testimony from his defense counsel under oath stating, 'that he has been getting copies of Plaintiff's mail from the District Attorney's Office'" and that counsel did inform Plaintiff that his mail was "being monitored." (ECF No. 115, p.

---

[7] Similar allegations of a vast conspiracy form the basis of a separate lawsuit brought by Plaintiff, 1:22-cv-00069-ADA-EPG, which has pending findings and recommendations to dismiss the case.

17). However, Plaintiff has submitted no transcript for the Court's review, nor a declaration from counsel to support this allegation.[8] And assuming that Plaintiff had submitted such evidence, the fact that unidentified mail was being monitored does not demonstrate that Defendants engaged in a conspiracy to interfere with Plaintiff's protected legal mail.

Lastly, Plaintiff's assertion that a watch commander advised him that his mail was "red flagged," and the declarations of Plaintiff's cellmates asserting that Defendants harassed him, even if true, are insufficient to show an agreement by Defendants to interfere with Plaintiff's legal mail. (ECF No. 115, p. 16).

Accordingly, Plaintiff has failed to offer evidence creating a genuine dispute of material fact from which a jury could reasonably render a verdict in his favor on his conspiracy claims. Thus, Defendants are entitled to summary judgment on these claims.

### v. Access to the Courts

Inmates have a right to access the courts, with a prison's provision of law libraries and legal materials being one acceptable method to ensure meaningful access. *Lewis v. Casey*, 518 U.S. 343, 350 (1996); *Bounds v. Smith*, 430 U.S. 817, 824–25 (1977). However, "only basic legal supplies, and not unnecessary amenities, are to be provided to inmates." *Phillips v. Hust*, 588 F.3d 652, 658 (9th Cir. 2009).

The right of access is merely the right to bring to court a grievance the inmate wishes to present, and is limited to direct criminal appeals, habeas petitions, and civil rights actions. *Lewis*, 518 U.S. at 354. To claim a violation of this right, a plaintiff must show that he has suffered an actual injury as a result of the alleged interference. *Christopher v. Harbury*, 536 U.S. 403, 415 (2002); *Lewis*, 518 U.S. at 351. In other words, he must be able to show that the deprivation has directly impacted the relevant litigation in a manner adverse to him. *Lewis*, 518 U.S. at 348 (defining "actual injury" as "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim").

With these standards in mind, the Court turns to the parties' arguments, beginning with Alvarez. She argues that Plaintiff has no evidence showing that she denied him legal materials

---

[8] Plaintiff states that he reached out to counsel for a declaration on this issue, but counsel has not responded to his request. (ECF No. 122, p. 13).

16

that he requested and was entitled to. (ECF No. 108-1, p. 8). Moreover, Alvarez states that, even assuming that Plaintiff was denied legal supplies, he has failed to demonstrate an actual injury from such denial. In support, Alvarez provides her declaration detailing her responses to Plaintiff's request for legal supplies. (ECF No. 108-10).

Based on the above, the Court concludes that the burden has shifted to Plaintiff to come forward with specific facts demonstrating the existence of genuine issues for trial from which a jury could reasonably render a verdict in his favor. *In re Oracle*, 627 F.3d at 387.

Plaintiff states that he has been denied legal supplies, *e.g.*, photocopies, "causing [him] injury where his complaints and petitions were denied from technical problems and failure to provide supporting evidence from the Defendants' performance."[9] (ECF No. 115, p. 21). However, beyond this and similar allegations, Plaintiff points to no specific case where he was unable to meet a filing deadline or present a claim because of a lack of legal supplies. (*See* ECF 122, p. 14 (stating that Plaintiff "filed a number of habeas corpus [petitions] that were denied as a result of an inadequate legal assistance program which [Alvarez] was legally responsible for")).

Moreover, to the extent that Plaintiff complains he has been prejudiced in his state court criminal case, that case remains pending, he has counsel to litigate it on his behalf, and he will be able to raise challenges to the proceedings on appeal. *Camposeco v. Bordeaux*, No. 1:19-cv-01330-BAM (PC), 2020 WL 5984420, at *7 (E.D. Cal. July 31, 2020), *report and recommendation adopted*, 2020 WL 5983157 (E.D. Cal. Oct. 8, 2020) (rejecting access-to-the-court claim where the plaintiff failed to allege an injury relating to his criminal case and failed to show that any alleged violation could not be addressed in his criminal appeal). Lastly, as Defendants note, Plaintiff agreed at his deposition to being able to make various filings in his state court cases, and "[t]he docket from this Court demonstrates that Plaintiff has not lacked

---

[9] Plaintiff also asserts that he does not need to show any actual injury because he is a pretrial detainee and not a prisoner; however, "whether plaintiff was a pretrial detainee or a convicted prisoner, the access to courts claim . . . would be analyzed under the same standards . . . established by the Supreme Court in [*Bounds* and *Lewis*]." *O'Neal v. San Bernardino Cnty. Sheriff's Dep't*, No. EDCV 11-803-DDP MAN, 2014 WL 2938508, at *1 (C.D. Cal. June 26, 2014); (see ECF No. 115, p. 22).

the ability to pursue civil litigation." (ECF No. 108-1, p. 8 n.1; ECF No. 108-2, p. 5; *see, e.g.*, ECF No. 108-5, p. 9). Thus, assuming that Plaintiff has been denied legal supplies, he has failed to show that he suffered an actual injury. *Alvarez v. Hill*, 518 F.3d 1152, 1155 (9th Cir. 2008) ("Failure to show that a 'nonfrivolous legal claim had been frustrated' is fatal to his *Bounds* claim.") (citations omitted).

Accordingly, Plaintiff has failed to offer evidence creating a genuine dispute of material fact from which a jury could reasonably render a verdict in his favor on his access-to-the-courts claim. Thus, Alvarez is entitled to summary judgment on this claim.

## IV.   CONCLUSION AND RECOMMENDATIONS

Based on foregoing, IT IS RECOMMENDED that:

1. Defendants' motion for summary judgment (ECF No. 108) be granted to the extent that it seeks dismissal of Plaintiff's conspiracy and access-to-the-court claims and denied to the extent that it seeks dismissal of Plaintiff's legal-mail claims; and
2. This action proceed only on Plaintiff's claims that Defendants Jason Quick, Elizabeth Alvarez, A. Rossette, Lt. Followill, Lisette Lopez, Dominic Ramos, Hermina Marley, and Carmela Prudente violated his First and Sixth Amendment rights regarding his legal mail.

These findings and recommendations are submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within twenty-one (21) days after being served with these findings and recommendations, any party may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be served and filed within fourteen (14) days after service of the objections.

\\\
\\\
\\\
\\\
\\\
\\\

The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **October 13, 2022**      /s/ Erica P. Grosjean
                                 UNITED STATES MAGISTRATE JUDGE